USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/12/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

AHMAD SEIR AZATULLAH,

              Plaintiff,

-against-

ALEJANDRO MAYORKAS, *Secretary of the Department of Homeland Security*; UR M. JADDOU, *Director of the United States Citizenship and Immigration Services*; and TIMOTHY J. HOUGHTON, *Director of the New York District of the United States Citizenship and Immigration Services*,

              Defendants.

1:20-cv-01069-MKV

**MEMORANDUM OPINION
AND ORDER OF DISMISSAL**

---

MARY KAY VYSKOCIL, United States District Judge:

Plaintiff Ahmad Seir Azatullah seeks an order vacating the denial of his application for adjustment of his immigration status to lawful permanent resident of the United States. Azatullah asserts claims under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, against the Secretary of the Department of Homeland Security, the Director of the United States Citizenship and Immigration Services ("USCIS"), and the Director of the New York District of USCIS (collectively, "Defendants").[1] Azatullah moves for summary judgment. Defendants move to dismiss for lack of jurisdiction or, in the alternative, for summary judgment. For the following reasons, this case is dismissed for lack of jurisdiction.

---

[1] Alejandro Mayorkas, Ur M. Jaddou, and Timothy J. Houghton automatically have been substituted as Defendants pursuant to Federal Rule of Civil Procedure 25(d).

## BACKGROUND

**I.    Factual Background**

   A. *Azatullah Flees Afghanistan*

Azatullah was born in 1968 in Kabul, Afghanistan. AR 9.[2] In the 1980s, Azatullah aided the mujahidin—the political opposition to the Afghan government at the time—by, among other things, hiding and transporting their weapons, donating blood to wounded fighters, providing money and supplies, distributing "anti-government literature," and guiding the mujahidin around Kabul to help with the strategic placement of mines in non-civilian areas. AR 4–5, 25–26. In January 1991, Azatullah's father and brother were arrested by Afghan police, who discovered mujahidin members and weapons in their family home. AR 327. The next day, with the assistance of the mujahidin, Azatullah left Kabul with his wife and younger brother. AR 404–08. They later travelled to New York. AR 406–08. A few months later, Azatullah's father, mother, and younger brothers also traveled to the United States. AR 412–13.

   B. *Azatullah Applies for Asylum*

In September 1991, Azatullah and his family members applied for asylum. AR 304–08. Their request was based on the past persecution suffered by Azatullah's father, who was tortured in prison, and their fear of future persecution for having supported the mujahidin. AR 288–99. Azatullah submitted an affidavit in support of his application, which acknowledged that he supported the mujahidin while living in Kabul. AR 24–26.

An asylum hearing was held in August 1992 before Immigration Judge ("IJ") Patricia Rohan. AR 309–426. Azatullah testified under oath about his support of the mujahidin. AR 399–

---

[2] Citations to "AR" refer to the Administrative Record submitted to the Court on July 13, 2020, and later amended on October 20, 2020. *See* Letter [ECF No. 18]; Letter [ECF No. 23-1]. Any pincites refer to the Bates-stamped numbers. The parties agree that the AR constitutes the full and complete record and that Rule 56.1 statements were not required. *See* Civil Case Management Plan and Scheduling Order [ECF No. 26].

400. IJ Rohan ultimately granted asylum to Azatullah's father, mother, and three minor brothers, but denied asylum for Azatullah, his wife, and his brother Rashad. AR 294–99. IJ Rohan explained that Azatullah had not shown past persecution and could not reasonably fear future persecution because, by that time, the mujahidin were aligned with the ruling Afghan government. AR 297–99. Azatullah, his wife, and brother appealed. AR 244–48. The Board of Immigration Appeals ("BIA") affirmed. AR 244–48.

In 1999, Azatullah, his wife, and brother moved to reopen the asylum proceedings based on their fear of the Taliban's rise to power in Afghanistan. AR 197–198. The motion was granted, and the matter was remanded for a second asylum hearing. AR 197–198. Azatullah and his wife were granted asylum in May 2001. SR 1,13.[3]

    C. *Azatullah Applies for an Adjustment of Status*

The next year, Azatullah filed a Form I-485 application to adjust his status to permanent resident, pursuant to 8 U.S.C. § 1159(b). *See* Answer ¶ 35 [ECF No. 15]. He was interviewed by USCIS nearly two decades later. AR 9–14, 679–766. During the interview, Azatullah was largely asked about his past support of the mujahidin. AR 09–80. Azatullah provided some inconsistent answers and attempted to disavow the statement (made in his 1991 asylum application) that he had aided the mujahidin with strategically placing mines. AR 20, 749–52. Ultimately, Azatullah testified that he had transported weapons for the mujahidin on one occasion. AR 752.

USCIS denied Azatullah's application for adjustment of status in April 2019 (the "Denial"). AR 1–8. USCIS explained that Azatullah was "inadmissible under INA [the Immigration and Nationality Act] Section 212(a)(3)(B) because [he] provided material support to a terrorist organization," although it noted that Azatullah "will not lose [his] asylum status." AR

---

[3] Citations to "SR" refer to the Supplement to the Administrative Record submitted on October 20, 2020. *See* Letter [ECF No. 23-2].

6–7. USCIS noted that it did not find credible Azatullah's "disavowal" of the statements made in his 1991 asylum application. AR 7.

## II.     Procedural Background

Azatullah sought judicial review in February 2020. *See* Complaint [ECF No. 1] ("Compl."). The Complaint asserts five claims: that (1) USCIS is collaterally estopped from finding him inadmissible based on his past support of the mujahidin because he was previously granted asylum (Count I); (2) the inadmissibility determination by USCIS is arbitrary and capricious because Azatullah was already granted asylum based on the same facts (Count II); (3) USCIS's determination that Azatullah is ineligible for a Limited General Exemption[4] is arbitrary and capricious (Count III); (4) Azatullah's application was denied for pretextual reasons (Count IV); and (5) Azatullah is entitled to declaratory relief (Count V). Azatullah voluntarily consents to the dismissal of Counts III and IV for lack of subject matter jurisdiction. *See* Memorandum of Law in Support 1 n.1 [ECF No. 74] ("Pl. Mem."); Reply Memorandum of Law 25 [ECF No. 77] ("Pl. Opp.").

The parties initially cross-moved for summary judgment in late 2020, and the Court held oral argument in early 2021. *See* Motion for Summary Judgment [ECF No. 27]; Motion for Summary Judgement [ECF No. 32]; Order Scheduling Oral Argument [ECF No. 49]. At oral argument, the parties advised the Court that a case addressing issues similar to those posed in this case, *Kakar v. United States Citizenship & Immigration Services*, 29 F.4th 129 (2d Cir. 2022), was on appeal at the Second Circuit. *See* Transcript at 56:20–57:18 [ECF No. 57]. At the urging of the Government and without objection from Azatullah, the Court stayed this action pending resolution of *Kakar*. *See* Order [ECF No. 53]; Transcript at 57, 60 [ECF No. 57].

---

[4] The Limited General Exemption provides an exemption from the terrorism-related inadmissibility grounds when certain specifications are satisfied. *See* 77 Fed. Reg. 49821-02 (Aug. 12, 2012).

4

The Second Circuit resolved *Kakar* in March 2022. Shortly thereafter, Defendants notified the Court of a recent Supreme Court decision, *Patel v. Garland*, __ U.S. __, 142 S. Ct. 1614 (2022), which, Defendants now contend, dictates that this case should be dismissed for lack of subject matter jurisdiction. In light of this new authority, the Court lifted the stay and directed the parties to re-file their motions. *See* Order [ECF No. 70]; Plaintiff's Motion for Summary Judgment [ECF No. 73]; Defendants' Cross Motion for Summary Judgement [ECF No. 75]. The parties filed opening briefs, *see* Pl. Mem.; Memorandum of Law in Support [ECF No. 76] ("Def. Mem."), and opposition briefs, *see* Pl. Opp.; Reply Memorandum of Law [ECF No. 79] ("Def. Opp.").

## LEGAL STANDARDS

**I.   Motion to Dismiss for Lack of Jurisdiction**

An action is properly dismissed under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction "if the court 'lacks the statutory or constitutional power to adjudicate it.'" *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.a.r.l*, 790 F.3d 411, 416–17 (2d Cir. 2015) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). The plaintiff invoking subject matter jurisdiction has the burden of proving by a preponderance of the evidence that jurisdiction exists. *Makarova*, 201 F.3d at 113. Where, as here, the jurisdictional challenge is fact-based, Defendants may "proffer[] evidence beyond the Pleading" and Azatullah must "come forward with evidence of [his] own to controvert that presented by [Defendants]." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016).

"The objection that a federal court lacks subject-matter jurisdiction may be raised at *any stage* in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 500 (2006) (emphasis added) (citation omitted). "If the court determines *at any time* that it lacks subject-matter jurisdiction," then it "*must* dismiss the action." Fed. R. Civ. P. 12(h)(3) (emphases added).

5

## II. Summary Judgment

To prevail on a motion for summary judgment, the movant must show "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.*

"Where, as here, a party seeks judicial review of agency action, summary judgment is appropriate, since 'whether an agency action is supported by the administrative record and consistent with the APA standard of review' is decided 'as a matter of law.'" *Residents for Sane Trash Sols., Inc. v. U.S. Army Corps of Engineers*, 31 F. Supp. 3d 571, 586 (S.D.N.Y. 2014) (quoting *UPMC Mercy v. Sebelius*, 793 F.Supp.2d 62, 67 (D.D.C. 2011)). "Generally, a court reviewing an agency decision is confined to the administrative record compiled by that agency when it made the decision." *Nat'l Audubon Soc. v. Hoffman*, 132 F.3d 7, 14 (2d Cir. 1997).

## ANALYSIS

Defendants argue that this action should be dismissed because the Court lacks subject matter jurisdiction under a jurisdiction-stripping provision of the INA: 8 U.S.C. § 1252(a)(2)(B). Defendants are correct.

## I. Section 1252 Strips This Court of Jurisdiction

### A. *Section 1252*

Congress has limited the jurisdiction of federal courts to review certain determinations made by USCIS. Relevant here, INA § 1252(a)(2)(B) states:

> Notwithstanding any other provision of law (statutory or nonstatutory) . . . and except as provided in subparagraph (D), and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review—

6

> (i) any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title, or
>
> (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of [asylum].

8 U.S.C. § 1252(a)(2)(B).

Subparagraph (D) clarifies that "[n]othing in subparagraph (B) . . . shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review *filed with an appropriate court of appeals* in accordance with this section."  8 U.S.C. § 1252(a)(2)(D) (emphasis added).  Taken together, subsection (B) of the INA strips courts of jurisdiction to review judgments regarding the granting of relief, or any other decision or action within the discretion of the Attorney General or Secretary of Homeland Security, but subsection (D) of that statute narrowly permits the courts of appeals—and *only* the courts of appeals—to review constitutional claims or questions of law.

Azatullah applied for an adjustment of status under 8 U.S.C. § 1159(b).  That provision states that "[t]he Secretary of Homeland Security or the Attorney General" "may adjust . . . the status of" a foreign national who has been granted asylum "in the Secretary's or the Attorney General's *discretion*."  *Id.* (emphasis added).  Because the ultimate decision of whether to grant Azatullah an adjustment of status is "in the Secretary's or the Attorney General's *discretion*," the text of Section 1252(a)(2)(B)(ii) plainly bars this Court from reviewing that determination.  *See Morina v. Mayorkas*, No. 22-CV-02994, 2023 WL 22617, at *6 (S.D.N.Y. Jan. 3, 2023) ("[B]y its plain terms, the jurisdiction-stripping provision of 8 U.S.C. § 1252(a)(2)(B)(ii) bars this Court from reviewing USCIS's ultimate discretionary decision to deny Plaintiff relief under 8 U.S.C. § 1159(b)."); *see also Cruz-Miguel v. Holder*, 650 F.3d 189, 193 (2d Cir. 2011) ("Federal courts lack jurisdiction to review a discretionary denial of adjustment of status.").

### B. *Section 1252 Is Not Limited to Discretionary Decisions or Actions*

Azatullah attempts to avoid this bar on judicial review by arguing that he does not challenge a *discretionary* determination. Rather, Azatullah contends that he challenges a *non-discretionary*, legal determination. *See* Pl. Mem. 11–18. Specifically, Azatullah contends that the Denial is (i) "barred by the legal doctrine of collateral estoppel" and (ii) insufficiently justified under the "procedural requirements" of the APA. Pl. Mem. 14. Such a challenge, according to Azatullah, is permissible because "the statute does not bar review of an agency's compliance with law." Pl. Mem. 12.

The decision of the Supreme Court in *Patel v. Garland* substantially undermines that assertion. In *Patel*, the Supreme Court considered whether Section 1252(a)(2)(B)(i) barred judicial review of a factual determination (made by an immigration judge) that rendered the plaintiff ineligible for an adjustment of status. *See* 142 S. Ct. at 1619–21. The Supreme Court ultimately concluded that Section 1252(a)(2)(B)(i) stripped courts of jurisdiction to review "*any and all* decisions relating to the granting or denying of discretionary relief," including underlying factual determinations. *Id.* at 1621 (emphasis added) (cleaned up). In reaching that conclusion, the Court squarely rejected the argument, urged by the Government, that the word "judgment" in Section 1252(a)(2)(B)(i) referred "exclusively to a decision that requires the use of *discretion*." *Id.* at 1622 (emphasis added). The Court explained:

> The provision *does not restrict itself to certain kinds of decisions*. Rather, it prohibits review of *any* judgment regarding the granting of relief under § 1255 and the other enumerated provisions. As this Court has repeatedly explained, the word "any" has an expansive meaning. Here, "any" means that the provision applies to judgments "*of whatever kind*" under § 1255, *not just discretionary judgments* or the last-in-time judgment.

*Id.* at 1622 (emphases altered) (cleaned up).

With *Patel* in mind, the plain language of Section 1252(a)(2)(B)(ii) clearly precludes judicial review of discretionary *and* non-discretionary determinations. This subsection, which directly follows the subsection that was interpreted in *Patel*, bars judicial review of "*any other* decision or action." As another judge in this District recently noted in *Morina v. Mayorkas*, this language "appears designed to ensure that statutory decisions and actions similar in type to the ones listed in subclause (i) are also barred from judicial review." 2023 WL 22617, at *9. Indeed, the *Morina* court remarked that the "any other" phrasing appeared to "operate[] as a catchall provision, the purpose of which is to ensure that categories of things similar in type to those specifically enumerated are covered." 2023 WL 22617, at *9 (citing *Sw. Airlines Co. v. Saxon*, __ U.S. __, 142 S. Ct. 1783, 1791 (2022)). Further, this subsection refers to "any other *action or decision*," which is demonstrably broader than the word "judgment" in the first subsection. *Compare Judgment*, Black's Law Dictionary (11th ed. 2019) ("A court's final determination of the rights and obligations of the parties in a case."), *with Action*, Black's Law Dictionary (11th ed. 2019) ("A thing done."); *Decision*, Black's Law Dictionary (11th ed. 2019) ("A judicial or agency determination after consideration of the facts and the law; esp., a ruling, order, or judgment pronounced by a court when considering or disposing of a case."); *see also* 2023 WL 22617, at *10 ("The words 'decision or action' are at least as broad, if not broader, than the word 'judgment' in subclause (i)."). The Court finds the *Morina* reasoning persuasive and likewise concludes that subsection (B)(ii) of Section 1252(a)(2) is best read as covering an even "broader swath of decisions and actions" than subsection (B)(i) of that statute. 2023 WL 22617, at *10. Because the Supreme Court has already determined that Section 1252(a)(2)(B)(i) is *not* textually limited to discretionary determinations, the same is necessarily true of the even broader language in Section 1252(a)(2)(B)(ii).

To the extent that Azatullah suggests that the reference to "discretion" in subsection (B)(ii) makes a difference, *see* Pl. Opp. 2, the Court disagrees. Section 1252(a)(2)(B)(ii) eliminates jurisdiction over "any other decision or action . . . *the authority for which is specified . . . to be in the discretion of the Attorney General or the Secretary of Homeland Security*." Importantly, the word "discretion" does not modify the phrase "decision or action." *See Morina*, 2023 WL 22617, at *10 ("[P]rovision (ii) does not require the 'decision or action' itself be discretionary. It does not, for example, state that 'no court shall have jurisdiction to review any other discretionary decision or action.'"). Instead, Section 1252(a)(2)(B)(ii) "strips courts of the jurisdiction to review decisions *that are statutorily specified to be in the discretion of the Attorney General or the Secretary of Homeland Security*." *Patel v. United States Att'y Gen.*, 971 F.3d 1258, 1272 (11th Cir. 2020) (emphasis added), *aff'd sub nom.*, *Patel*, __ U.S. __, 142 S. Ct. 1614. Because the decision by USCIS to deny Azatullah a status adjustment was "in the Secretary's or . . . Attorney General's *discretion*" under Section 1159(b), the court is deprived of jurisdiction to review any associated "decision or action"—discretionary or otherwise.[5]

With the guidance of *Patel* in mind, and having determined that Section 1252(a)(2)(B)(ii) is at least as broad as Section 1252(a)(2)(B)(i), the Court concludes that it lacks jurisdiction to consider even the purportedly legal determinations challenged by Azatullah.[6]

## II. Azatullah's Remaining Counterarguments Are Unpersuasive

Azatullah raises three principal counterarguments. None are successful.

---

[5] Azatullah may still seek review under Section 1252(a)(2)(D) by filing "a petition for review . . . *with an appropriate court of appeals*." *See Morina*, 2023 WL 22617, at *7 ("To the extent Plaintiff seeks to challenge legal conclusions, Plaintiff must do so in compliance with 8 U.S.C. § 1252(a)(2)(D).").

[6] "That [Azatullah's] complaint is nominally brought under the APA . . . compels no different result" because "judicial review of agency action is not available under the APA where such review is limited by another statute—here, the INA." *Ying Lin v. United States Dep't of Homeland Sec.*, 699 F. App'x 44, 46 (2d Cir. 2017).

A. *Second Circuit Precedent Does Not Compel This Court to Exercise Jurisdiction*

Azatullah contends that Second Circuit authority dictates that this Court "may consider . . . predicate legal question[s]." *Sepulveda v. Gonzales*, 407 F.3d 59, 63 (2d Cir. 2005) (Sotomayor, J.); *see also You, Xiu Qing v. Nielsen*, 321 F. Supp. 3d 451, 457 (S.D.N.Y. 2018) ("Whether Respondents' actions were legal is not a question of discretion, and, therefore, falls outside the ambit of § 1252."). *See* Pl. Mem. 12–15. Specifically, Azatullah argues that "settled Second Circuit precedent," namely, *Sepulveda v. Gonzales*, 407 F.3d 59 (2d Cir. 2005), states that Section 1252(a)(2)(B) "does not bar review of an agency's compliance with law." Pl. Opp. 2; Pl. Mem. 12. In *Sepulveda*, the Second Circuit held that "8 U.S.C. § 1252(a)(2)(B) [did] not strip courts of jurisdiction to review nondiscretionary decisions regarding an alien's eligibility for the relief specified in 8 U.S.C. § 1252(a)(2)(B)(i)." 407 F.3d at 62–63.

*Sepulveda* is distinguishable. To start, the *Sepulveda* case addressed an application for relief under Section 1252(a)(2)(B)(i)—*not* Section 1252(a)(2)(B)(ii). *See* 407 F.3d at 62–63. Further, *Sepulveda* addressed a petition for review of removal proceedings filed directly in the Second Circuit. *Id.* at 62; *see also* 8 U.S.C. § 1252(a)(2)(D). In any event, the reasoning of *Sepulveda* has been wholly undermined by *Patel*. *See Grytsyk v. Morales*, 527 F. Supp. 3d 639, 653 (S.D.N.Y. 2021). As explained above, *Patel* entirely rejected the discretionary/non-discretionary distinction that the Government sought to manufacture. *See* 142 S. Ct. at 1625. Instead, the Supreme Court instructed that Section 1252(a)(2)(B) referred to determinations "of whatever kind." *Id.* at 1622 (cleaned up). In this vein, the D.C. Circuit recently commented that *Sepulveda* "turned on the alleged difference between discretionary and nondiscretionary determinations that *Patel* rejected." *Abuzeid v. Mayorkas*, 62 F.4th 578, 584 n.4 (D.C. Cir. 2023); *see also Chaudhari v. Mayorkas*, No. 22-CV-47, 2023 WL 1822000, at *8 (D. Utah Feb. 8, 2023) ("The Supreme Court has undermined—even vitiated—the once prevailing distinction between

discretionary and nondiscretionary determinations for the purpose of § 1252(a)(2)(B)(i)'s preclusive effect.").[7]

More to the point, the Second Circuit has recently indicated that the jurisdictional issues posed here are *not* settled. In *Rahman v. Mayorkas*, the plaintiff, much like Azatullah, alleged that collateral estoppel precluded USCIS from denying his Section 1159(b) status adjustment application (based on an earlier award of asylum), and that the agency's decision was arbitrary and capricious. No. 22-CV-904, 2023 WL 2397027, at *2 (2d Cir. Mar. 8, 2023). In resolving the dispute, the Circuit assumed "hypothetical jurisdiction" and proceeded to the merits.[8] *Id.* at *1 & n.2. But before doing so, the Second Circuit, citing *Patel*, acknowledged that "there is an *open question* as to whether [it has] jurisdiction to review *any aspect* of a USCIS decision denying discretionary relief, such as a status adjustment, outside of a removal proceeding." *Id.* at *1 & n.2 (emphases added). Contrary to Azatullah's assertions, this language indicates that the law in this Circuit is *not* "settled." *See* Pl. Opp. 2. Similarly, the district judge in *Morina* noted that, "[t]o the extent Plaintiff seeks to challenge legal conclusions, Plaintiff must do so in compliance with 8 U.S.C. § 1252(a)(2)(D)"—again, without reference to the purportedly binding precedents cited by

---

[7] Following *Patel*, every court to have considered the discretionary/non-discretionary distinction urged by Azatullah has decisively rejected it. *See, e.g.*, *Abuzeid*, 62 F.4th at 584 ("*Patel* precludes review of all kinds of agency decisions that result in the denial of relief—whether they be discretionary or nondiscretionary, legal or factual."); *Britkovyy v. Mayorkas*, 60 F.4th 1024, 1028 (7th Cir. 2023) ("Taken together, these provisions provide for judicial review . . . of legal and constitutional claims . . . only if those claims are brought in a petition for review from a final order of removal."); *Morina*, 2023 WL 22617, at *7 ("To the extent Plaintiff seeks to challenge legal conclusions, Plaintiff must do so in compliance with 8 U.S.C. § 1252(a)(2)(D)."); *Chaudhari*, 2023 WL 1822000, at *8 ("To the extent Chaudhari's Amended Petition presents a question of law regarding USCIS' construction of the INA . . . he must look to the narrow recourse afforded by § 1252(a)(2)(D)"); *Fernandes v. Miller*, No. 22-CV-12335, 2023 WL 1424171, at *4 (E.D. Mich. Jan. 31, 2023) (finding no jurisdiction despite plaintiff's assertion that "he is bringing a legal challenge, not a factual challenge").

[8] Courts may "assume hypothetical jurisdiction where the jurisdictional issue is statutory in nature." *Butcher v. Wendt*, 975 F.3d 236, 242 (2d Cir. 2020). The Second Circuit has "found it particularly prudent to assume hypothetical jurisdiction where the jurisdictional issues are complex and the substance of the claim is plainly without merit." *Id.* at 242–43 (cleaned up).

Azatullah. Accordingly, the Court is persuaded that adherence to the Supreme Court's clear guidance in *Patel* is the proper course.[9]

### B. *Section 1252 Is Not Limited to the Review of Orders of Removal*

Azatullah next argues that Section 1252(a)(2)(B) *only* deprives courts of jurisdiction where an alien challenges an order of removal. *See* Pl. Mem. 18–22; Pl. Reply 5–8. This argument is meritless. Section 1252(a)(2)(B) expressly deprives courts of jurisdiction "*regardless* of whether the judgment, decision, or action *is made in removal proceedings*." 8 U.S.C. § 1252(a)(2)(B) (emphases added); *see Abuzeid v. Mayorkas*, 62 F.4th 578, 584 (D.C. Cir. 2023) ("The 'regardless' clause 'makes clear that the jurisdictional limitations imposed by § 1252(a)(2)(B) also apply to review of agency decisions made outside of the removal context.'" (quoting *Lee v. USCIS*, 592 F.3d 612, 619 (4th Cir. 2010)). Because the reading proposed by Azatullah would render the "regardless" clause "inoperative or superfluous, void or insignificant," it is "at odds with one of the most basic interpretive canons." *Corley v. United States*, 556 U.S. 303, 314 (2009) (citation omitted).

The title of Section 1252, "Judicial review of orders of removal," does not alter this outcome. *See* Pl. Reply 6. Where statutory text is unambiguous, the Supreme Court has instructed that "the title of a statute *cannot limit* the plain meaning of the text." *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 212 (1998) (emphasis added) (cleaned up). Azatullah identifies no ambiguity in the text of Section 1252(a)(2)(B), nor does the Court discern one. Perhaps for that reason, virtually

---

[9] Azatullah also argues that Section 1252(a)(2)(B) does not bar review of his claim that USCIS failed to follow its own procedures. *See, e.g.*, Pl. Mem. 13 (citing *Mantena v. Johnson*, 809 F.3d 721, 728–29 (2d Cir. 2015); *Sharkey v. Quarantillo*, 541 F.3d 75, 86 (2d Cir. 2008); *Firstland Int'l, Inc. v. U.S. I.N.S.*, 377 F.3d 127, 131 (2d Cir. 2004)). Unlike in those cases, Azatullah does not identify any particular statute or regulation that USCIS allegedly violated. That distinction is critical, as procedures outlined in statutes or regulations are, by definition, *not* "in the discretion of the Attorney General or the Secretary of Homeland Security." 8 U.S.C. § 1252(a)(2)(B)(ii). Regardless, the Court is unpersuaded by this argument because, again, the cited authority pre-dates *Patel*, and was not addressed by the Second Circuit in *Rahman*—which involved a virtually indistinguishable challenge to agency action.

13

every court to have addressed this question post-*Patel* has concluded that the jurisdictional limitations of Section 1252(a)(2)(B) apply outside of the removal context. *See, e.g.*, *Abuzeid*, 62 F.4th at 584; *Morina*, 2023 WL 22617, at *9; *Fernandes v. Miller*, No. 22-CV-12335, 2023 WL 1424171, at *4 (E.D. Mich. Jan. 31, 2023); *Rabinovych v. Mayorkas*, 624 F. Supp. 3d 19, 25 (D. Mass. 2022), *appeal dismissed*, No. 22-1731, 2023 WL 2770984 (1st Cir. Jan. 13, 2023) (collecting cases); *Chaudhari*, 2023 WL 1822000, at *6 n.74 (same). This Court reaches the same conclusion.

### C. *The Statutory Text Overcomes the Strong Presumption in Favor of Judicial Review*

The Court further rejects Azatullah's fallback attempt to rely on the "strong presumption in favor of judicial review." Pl. Opp. 9. The "presumption favoring judicial review of administrative action" may be "overcome by clear and convincing evidence of congressional intent to preclude judicial review." *Guerrero-Lasprilla v. Barr*, __ U.S. __, 140 S. Ct. 1062, 1069 (2020) (cleaned up). For the reasons discussed above, the Court has no hesitation in concluding that "[t]he statutory language demonstrates clear congressional intent to strip [this Court's] jurisdiction to review claims like this one." *Britkovyy v. Mayorkas*, 60 F.4th 1024, 1030 (7th Cir. 2023); *see also Abuzeid*, 62 F.4th at 585 ("We think that the plain and unequivocal language in § 1252(a)(2)(B)(i) is clear and convincing evidence of Congress's intent to strictly circumscribe the jurisdiction of federal courts over cases involving the adjustment of immigration status.").

Accordingly, this case is dismissed for lack of subject matter jurisdiction.[10]

---

[10] Even if Section 1252(a)(2)(B) did not deprive this Court of jurisdiction, the Court would nonetheless conclude on the merits that Defendants are entitled to summary judgment. Collateral estoppel did not preclude USCIS from finding Azatullah inadmissible based on his past support of the mujahidin because the issue was not "actually litigated" at the asylum proceeding before IJ Rahman. *See Rahman*, 2023 WL 2397027, at *2 ("A grant of asylum alone is insufficient to show that a terrorism bar was actually litigated."). Similarly, the Denial was not arbitrary and capricious because USCIS articulated a "satisfactory explanation" for its decision, *J. Andrew Lange, Inc. v. F.A.A.*, 208 F.3d 389, 391 (2d Cir. 2000), namely, that Azatullah had provided material support to the mujahidin and disavowed his earlier statements, which is sufficient to satisfy this Court's "narrow" scope of review, *Karpova v. Snow*, 497 F.3d 262, 267 (2d Cir. 2007) (citation omitted).

## **CONCLUSION**

For the foregoing reasons, this case is dismissed for lack of jurisdiction. The Clerk of Court is respectfully requested to terminate all pending motions and to close this case.

**SO ORDERED.**

Date: **September 12, 2023**             **MARY KAY VYSKOCIL**
**New York, NY**                          **United States District Judge**